## THE COMMISSIONERS OF CHARITIES OF THE COUNTY OF KINGS, APPELLANTS, *v.* JAMES RICHMOND AND OTHERS, RESPONDENTS.

*Kings county insane asylum — right of, to receive property belonging to a pauper lunatic — 1844, chap. 174, sec. 8 — what may be shown as a defense in an action under it.*

Section 8 of chapter 174 of 1844 provides that if any person, admitted and received as a pauper lunatic into the lunatic asylum on the county farm in the county of Kings, be entitled to or possessed of, or shall, during his continuance in the asylum, become entitled to any wages, money on deposit or other personal property, it shall be lawful for the superintendent of the poor of the said county to demand and sue for and recover such wages, moneys or personal property, and apply them when so received for and towards the expenses which have been or may be incurred in the support of the lunatic.

*Held,* that the act only applied to those cases in which a person, both a pauper and a lunatic, was duly and lawfully received and detained in the said asylum.

That in an action to recover money on deposit belonging to a person who had been received into and detained in the asylum, he might show that he was not a lunatic nor a pauper, and that he was wrongfully and unlawfully taken to and detained in the asylum.

The care and custody of the insane in this State is now regulated by chapter 446 of 1874.

APPEAL from a judgment in favor of the defendant, entered upon the trial of this action by the court without a jury.

The defendant Richmond was detained, at the expense of the county, for nineteen months in the Kings County Insane Asylum, he having been admitted and classified as a pauper patient. After he had been there for about eighteen months, the Board of Charities Commissioners ascertained that he had over $2,000 on deposit with the co-defendant. It thereupon, by resolution, directed that such measures be taken as may be necessary for the purpose of reimbursing the county for the expense it had incurred in his support and maintenance.

The county, in virtue of the provisions of sections 8 and 9 of chapter 174, Laws 1844, has a lien or claim on "the wages, money on deposit or other personal property" of a person admitted as a pauper into any of the county institutions.

Prior to his reception into the asylum, two physicians had certi-

fied under oath that they had personally examined him and that he was insane and a proper person for care and treatment under the provisions of chapter 446, Laws 1874.

It was claimed by the defendant that the act of 1844 was unconstitutional and that it had been impliedly repealed by the act of 1874, chapter 446.

The plaintiffs contended (1) that the question as to the legality of the detention of Richmond in the asylum by the medical superintendent must be governed by the act of 1874, which is a substitute for all prior enactments relating to the same subject, and the regularity of the commitment thereunder could not be controverted by the defendant; (2) that the rights of the county, which is a body corporate and a political division of the State, could not be prejudiced by the acts of officials intrusted with the administration of the lunacy laws; that these officials are not, in a legal sense, the servants or agents of the county, but public officers selected in the manner prescribed by statute law, from which they derive all their authority.

*Wm. Sullivan,* for the appellants.

*Benj. G. Hitchings,* for the respondents.

DYKMAN, J.:

The defendant Richmond presented himself at the hospital under the charge of the plaintiffs and applied for admission for treatment for a bodily ailment, and was so admitted. This was on the 8th day of July, 1878. He was not a pauper and did not represent himself as such, but offered to pay his board. This offer was refused, and the person receiving him informed him he would be taken without pay. This person, however, took from him forty-nine dollars in money and a watch of the value of twenty-five dollars. He remained in the hospital three days, when he was discharged. He then attempted to leave and demanded his money and his watch. He was then taken to the alms-house, and from there to the asylum by the employes of the plaintiffs against his will, and detained there until the 8th day of August, 1878, when he was sent to the insane asylum, another department of the institution under the charge of the plaintiffs, forcibly and against his

will, where he was detained and restrained of his liberty until the 8th day of March, 1880. He was not insane at the time of his imprisonment nor at any time during his confinement in the asylum. Certificates of insanity were procured by the agents of the plaintiff from physicians in their employ at the time of his incarceration, without the application of any person and without notice to the defendant. These facts are found by the judge before whom this cause was tried, and he also found that the defendant was detained illegally and without due process of law.

This action is for the recovery of board and maintenance of the defendant Richmond during the time he was an inmate of the lunatic asylum under the circumstances detailed, and for the confiscation of certain funds on deposit with the other defendant belonging to him and their appropriation to the payment of the judgment.

It may be admitted that by devolution of authority the plaintiffs may maintain an action like this in a proper case. But that they can be permitted to seize any citizen at will, procure certificates of his insanity from their own physicians without notice, shut him up in their asylum, confiscate his estate for their charges, is a proposition quite novel and somewhat startling, and yet it is the proposition of the counsel for these plaintiffs that the validity of an adjudication of insanity cannot be assailed in an action of this description, but that the right of recovery rests solely on the fact of maintenance in the asylum at the expense of the county.

It is written in the Constitution of the United States that no State shall deprive any person of life, liberty or property without due process of law, and the Constitution of our own State provides that no member of the State shall be deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers, nor be deprived of life, liberty or property without due process of law. It was in Magna Charta that no freeman should be taken or imprisoned, * * * but by the lawful judgment of his peers or by the law of the land, and these are for the security of precious privileges to all people. Plainly the incarceration of the defendant Richmond was in violation of these guarantees of personal liberty, and if there be any statute in justification of such action, they are violative of these

constitutional provisions and invalid. But there are none. The care and custody of the insane in this State is now regulated by chapter 446 of the Laws of 1874, and instead of being left to the mercy of strangers or officers whose interest or caprice it may be to pick them up and place them in confinement in case of the refusal or neglect of any committee or guardian of a lunatic or his relatives to confine and maintain him, or where there is no committee guardian or relative of sufficient ability to do so, then it is the duty of the overseers of the poor or constables to report the same to the superintendent of the poor who shall apply to the county judge or surrogate who may issue a warrant to apprehend the lunatic. And thus these proceedings must now be initiated, and as if to guard against what has come to pass in this very case, a section of this same law is that no physician who is a regular professional attendant in an asylum shall certify to the insanity of any person, for the purpose of committing him thereto.

It thus appears that neither these plaintiffs nor any of their officers or employes had any authority to institute proceedings in lunacy against the defendant. Richmond, and that their proceedings were absolutely void; nay, more, they were wrongful. It cannot be that they can set up such proceedings as a foundation for the recovery of the board of the person they have thus wronged during the time of his unlawful imprisonment.

The statute of 1844, chapter 144, under which this action is brought, is not for such a case. That gives an action to recover and receive the money on deposit of a lunatic patient received and admitted into this asylum as a pauper lunatic. This man was neither a pauper nor a lunatic, and thus two essential elements for the action are therefore wanting.

The judgment should be affirmed, with costs.

BARNARD, P. J., concurred; GILBERT, J., not sitting.

Judgment affirmed, with costs.